## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Coventry Credit Union

        Plaintiff

           v.                             CIVIL ACTION NO.
                                      IN ADMIRALTY

Mailman's Saving Grace, Her
Engines, Machinery, Tackle, Apparel,
Appurtenances, etc., *in rem.*
And Scott S. Mailman in personam

        Defendants

## VERIFIED COMPLAINT FOR FORECLOSURE OF
## FIRST PREFERRED SHIP MORTGAGE AGAINST MAILMAN'S SAVING GRACE

The Plaintiff, Coventry Credit Union (the "Credit Union") by its attorneys, and complaining *in rem* against Defendant Mailman's Saving Grace (O.N. 1173235), her engines, machinery, tackle, apparel, furniture, equipment, rigging, and all other necessary appurtenances thereto (the "Vessel"), and *in personam* against Scott S. Mailman (the "Owner") to enforce a preferred ship mortgage, alleges as follows:

### Jurisdiction and Venue

1.   Subject matter jurisdiction of this Honorable Court is based upon 28 U.S.C. §1333 as this is an admiralty claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and Supplemental Rule C of the Federal Rules of Civil Procedure and pursuant to the provisions of 28 U.S.C. § 1367.  Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b). The Credit Union invokes the maritime procedures and special relief provided in Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure for the arrest of the Vessel.

Parties

2.   The Credit Union is a Rhode Island state-chartered credit union that is authorized to issue

loans and to engage in depository and other financial transactions in the state of Rhode Island.

3.   The Vessel is a 2005 Formula 37PC 38'6" vessel documented with the United States

Coast Guard Official No. 1173235, and is, and will be during the pendency of this action, within

the jurisdiction of the United States and this Honorable Court.

4.   The Owner resides at 7 Patriot Lane – Apt. 12, Georgetown, MA 01833.

5.   Based upon and Abstract of Title from the National Vessel Documentation Center, there

are no other lien holders and at all times relevant hereto, the Vessel was, and still is, owned by

the Owner.  A copy of the Abstract of Title is attached hereto as Exhibit A.

Factual Allegations

6.   The Credit Union is engaged in, among other things, the lending of money for the

purchase of maritime vessels.

7.   On or about February 17, 2015, the Owner, executed and delivered to the Credit Union a

Note, Disclosure, and Security Agreement (collectively, the "Loan Documents") in the original

principal amount of $125,581.86 (a true and accurate copy of which is attached hereto as Exhibit

B).

8.   To secure his obligation to the Credit Union under the Loan Documents, the Owner gave

the Credit Union a First Preferred Ship Mortgage on the Vessel (the "Mortgage") (a true and

accurate copy of which is attached hereto as Exhibit C).

9.   On February 25, 2015 the Mortgage was duly recorded at the United States Coast

Guard's National Vessel Documentation Center in Batch Number 25821600, with a Document

ID of 15.

10. The loan is in default for failure to make monthly payments of $777.65 to the Credit Union from June 19, 2016 to the present.

11. The Credit Union provided the Owner with a notice of the default on November 23, 2016; however, as of the date of the filing of this complaint, the default has not been cured (a true and accurate copy of which is attached hereto as Exhibit D).

12. Because of the payment default, the terms of the Loan Documents have been breached.

13. As a direct and proximate result of the foregoing, the Credit Union has sustained damages in the amount of $126,380.06 (as of July 10, 2017), as nearly as the same can now be determined, together with interest, penalty, foreclosure and collection costs, not including legal expenses and other additional miscellaneous costs, both incurred and to be incurred.

14. The Credit Union has duly performed all duties and obligations on its part to be performed under the Loan Documents and Mortgage.

CAUSES OF ACTION

Count I – Enforcement of Preferred Ship Mortgage
(Against the Vessel *in rem*)

15. The Credit Union hereby incorporates the assertions set forth in paragraphs 1-14 as if separately set forth and repeated herein.

16. By virtue of the Mortgage and the Ship Mortgage Act of 1920, as amended and re-codified in Title 46, United States Code, §§31301 *et seq*., the Credit Union holds a valid and enforceable preferred ship mortgage on the Vessel in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred ship mortgage against the Vessel *in rem*.

<u>Count II – Enforcement of Preferred Ship Mortgage</u>
(Against the Owner *in personam*)

17. The Credit Union hereby incorporates the assertions set forth in paragraphs 1-15 as if separately set forth and repeated herein.

18. By virtue of the Mortgage and the Ship Mortgage Act of 1920, as amended and recodified in Title 46, United States Code, §§31301 *et seq*., the Owner is liable to the Credit Union for the amount of the outstanding indebtedness secured by the mortgaged Vessel, or any deficiency in the full payment of said indebtedness.

WHEREFORE, the Credit Union prays that this Honorable court adjudge as follows:

(i)      That *in rem* process issue in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, may issue against the whole of the Vessel, pursuant to Rule C of the Supplemental Rule for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure;

(ii)      That all persons having or claiming to have any interest in the Vessel be cited to appear and answer under oath, all and singular the matter aforesaid;

(iii)      That process in due form of law according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue against the Owner citing it to appear and answer under oath to each and all of the matters aforesaid;

(iv)      That as to Count I, the whole Vessel be condemned and sold to satisfy the Credit Union's judgment;

(v)      That as to Count I, a Warrant for Arrest be issued as to the Vessel;

(vi)      That as to Count II, judgment enter in its favor against the Owner in the amount of its liquidated and unliquidated damages, including any outstanding deficiency which may

accrue pursuant to the condemnation and sale of the Vessel, together with pre and post-judgment interest, penalties, foreclosure and collection costs and expenses, including reasonable attorneys' fees, and other damages which may be shown at trial; and

        (vii)    That the Credit Union has such other and further relief as this Honorable Court and justice may deem just and proper under the circumstances.

 

                                             Coventry Credit Union,
                                             By its Attorney,

July 11, 2017                             /s/ *David A. Lavenburg*
                                           David A. Lavenburg, Esq.
                                           Kroll, McNamara, Evans & Delehanty, LLP
                                           65 Memorial Road, Suite 300
                                           West Hartford, CT  06107
                                           (860) 561-7070
                                           (860) 561-7075 Fax
                                           Juris No.: ct09694

<u>Verification</u>

Susana Sollaccio, in her capacity of Director of Collections for Coventry Credit Union, hereby states under the penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1.  I am Susana Sollaccio, Director of Collections for Coventry Credit Union, plaintiff herein.

2.  I have read the foregoing Verified Complaint and I know the contents hereof and the same are true to the best of my knowledge.  As to the matters therein stated to be upon information and belief, I believe them to be true.

3.  The sources of my information and the grounds for my beliefs are the financial statements and business records of Coventry Credit Union, as well as my own involvement with the subject Vessel, Mortgage, Loan Documents and the collection of the indebtedness.

I hereby certify under the penalty of perjury that the foregoing is true and correct on this 7th day of July, 2017.

Name: Susana Sollaccio
Title:   Director of Collections

# EXHIBIT A

| DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG - 1332 | **GENERAL INDEX OR ABSTRACT OF TITLE** | OMB APPROVED 2115-0110 |
| --- | --- | --- |

OFFICIAL NUMBER: 1173235     NAME OF VESSEL   SLOT'S O' FUN II

HIN NUMBER: TNRD4652C505     IMO NUMBER:

VESSEL BUILT AT   DECATUR, IN, UNITED STATES

(AND)                                                                      IN 2005

BY PORTER INC

FOR STRONG'S MARINE LLC

FOR

BUILDER'S CERTIFICATE DATED   05/10/2005

TITLE ASSIGNED TO

---

| DISCHARGED | INSTRUMENT TYPE | | | |
| --- | --- | --- | --- | --- |
| **YES** | **PREFERRED MORTGAGE** | | | |
| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
| 100 | **MAY 23, 2005** | **$207,595.00** | **379842** | **3856041** |
| DATE FILED | | TIME FILED | STATUS | |
| **JUNE 15, 2005** | | **11:35 AM** | **RECORDED** | |

MORTGAGOR
  LEONARD TARZIA

MORTGAGEE
  BANK OF AMERICA NA
  PO BOX 2759
  JACKSONVILLE FL 32203-2759

---

| | INSTRUMENT TYPE | | | |
| --- | --- | --- | --- | --- |
| | **BILL OF SALE** | | | |
| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
| 100 | **MAY 27, 2005** | **$1.00** | **379842** | **3856039** |
| DATE FILED | | TIME FILED | STATUS | |
| **JUNE 15, 2005** | | **11:35 AM** | **RECORDED** | |

SELLER
  STRONG'S MARINE LLC

BUYER
  STRONG'S MARINE OF SOUTHAMPTON LLC

---

| | INSTRUMENT TYPE | | | |
| --- | --- | --- | --- | --- |
| | **BILL OF SALE** | | | |
| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
| 100 | **MAY 27, 2005** | **$1.00** | **379842** | **3856040** |
| DATE FILED | | TIME FILED | STATUS | |
| **JUNE 15, 2005** | | **11:35 AM** | **RECORDED** | |

SELLER
  STRONG'S MARINE OF SOUTHAMPTON LLC

BUYER
  LEONARD TARZIA

---

This space intentionally left blank

| DEPARTMENT OF<br>HOMELAND SECURITY<br>U.S. COAST GUARD<br>CG - 1332 | GENERAL INDEX OR ABSTRACT OF TITLE<br>CONTINUATION SHEET NO. 1 | Official No.<br>**1173235** |
|---|---|---|

| INSTRUMENT TYPE<br>**SATISFACTION OF MORTGAGE** | REFERS TO: BATCH: 379842 DOC ID:<br>3856041 |
|---|---|

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| 100 | **NOVEMBER 9, 2011** | $207,595.00 | 834763 | 14363228 |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| **NOVEMBER 14, 2011** | **12:50 PM** | **RECORDED** |

**MORTGAGEE**
BANK OF AMERICA NA

**MORTGAGOR**
LEONARD J TARZIA

| INSTRUMENT TYPE<br>**BILL OF SALE** |
|---|

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| 100 | **NOVEMBER 1, 2011** | $1.00 | 835474 | 14379098 |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| **NOVEMBER 17, 2011** | **1:50 PM** | **RECORDED** |

**SELLER**
LEONARD TARZIA

**BUYER**
MCM ASSETS LLC

| INSTRUMENT TYPE<br>**BILL OF SALE** |
|---|

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| 100 | **JUNE 12, 2012** | $1.00 | 872379 | 15298988 |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| **JUNE 12, 2012** | **4:00 PM** | **RECORDED** |

**SELLER**
EAST COAST FLIGHTCRAFT INC

**BUYER**
NICK MITCHELL AND HEATHER MITCHELL, JOINT TENANTS WITH SURVIVORSHIP

| INSTRUMENT TYPE<br>**BILL OF SALE** |
|---|

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| 100 | **NOVEMBER 21, 2012** | $1.00 | 7107400 | 1 |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| DECEMBER 13, 2012 | 3:19 PM | TERMINATED: JULY 12, 2013 |

**SELLER**
MCM ASSETTS LLC

**BUYER**
EAST COAST FLIGHTCRAFT INC

| INSTRUMENT TYPE<br>**BILL OF SALE** |
|---|

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| 100 | **MARCH 11, 2013** | $1.00 | 9778600 | 4 |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| **MARCH 12, 2013** | **2:42 PM** | **RECORDED** |

**SELLER**
MCM ASSETS LLC

**BUYER**
EAST COAST FLIGHTCRAFT INC

This space intentionally left blank

| DEPARTMENT OF<br>HOMELAND SECURITY<br>U.S. COAST GUARD<br>CG - 1332 | GENERAL INDEX OR ABSTRACT OF TITLE<br>CONTINUATION SHEET NO. 2 | Official No.<br>**1173235** |
|---|---|---|

**STATUS:  ON RECORD**

Vessel Name Change To:  DADDY'S GIRLS II (7-12-2013)

| | INSTRUMENT TYPE<br>**BILL OF SALE** | | | |
|---|---|---|---|---|
| % CONVEYED<br>100 | DATE OF INSTRUMENT<br>**FEBRUARY 5, 2015** | AMOUNT<br>$1.00 | BATCH<br>20028200 | DOC ID<br>35 |
| DATE FILED<br>MAY 30, 2014 | | TIME FILED<br>10:20 AM | STATUS<br>**RECORDED** | |

SELLER

NICK MITCHELL
HEATHER MITCHELL

BUYER

EAST COAST FLIGHTCRAFT INC

CLARIFICATION REMARK

02/12/2015   DATE OF INSTRUMENT UPDATED.

CORRECTION REMARK

02/12/2015   INSTRUMENT STATUS CORRECTED FROM RECORDED.

| | INSTRUMENT TYPE<br>**BILL OF SALE** | | | |
|---|---|---|---|---|
| % CONVEYED<br>100 | DATE OF INSTRUMENT<br>MAY 22, 2014 | AMOUNT<br>$10.00 | BATCH<br>20028200 | DOC ID<br>36 |
| DATE FILED<br>MAY 30, 2014 | | TIME FILED<br>10:20 AM | STATUS<br>**RECORDED** | |

SELLER

EAST COAST FLIGHTCRAFT INC

BUYER

FAIRBANKS YACHT GROUP LLC

| | INSTRUMENT TYPE<br>**BILL OF SALE** | | | |
|---|---|---|---|---|
| % CONVEYED<br>100 | DATE OF INSTRUMENT<br>MAY 22, 2014 | AMOUNT<br>$10.00 | BATCH<br>20028200 | DOC ID<br>37 |
| DATE FILED<br>MAY 30, 2014 | | TIME FILED<br>10:20 AM | STATUS<br>**RECORDED** | |

SELLER

FAIRBANKS YACHT GROUP LLC

BUYER

SCOTT S MAILMAN
BRANDIE L MAILMAN, JOINT TENANTS WITH SURVIVORSHIP

| | INSTRUMENT TYPE<br>**PREFERRED MORTGAGE** | | | |
|---|---|---|---|---|
| % CONVEYED<br>100 | DATE OF INSTRUMENT<br>MAY 22, 2014 | AMOUNT<br>$127,984.00 | BATCH<br>20028200 | DOC ID<br>38 |
| DATE FILED<br>MAY 30, 2014 | | TIME FILED<br>10:20 AM | STATUS<br>**RECORDED** | |

MORTGAGOR

SCOTT S MAILMAN
BRANDIE L MAILMAN

MORTGAGEE

PAWTUCKET CREDIT UNION
1200 CENTRAL AVENUE
PAWTUCKET RI 02861

This space intentionally left blank

| DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG - 1332 | GENERAL INDEX OR ABSTRACT OF TITLE CONTINUATION SHEET NO. 3 | Official No. 1173235 |
|---|---|---|

**STATUS:  ON RECORD**

Vessel Name Changed to MAILMAN'S SAVING GRACE (02/12/15)

| INSTRUMENT TYPE | | | | |
|---|---|---|---|---|
| **BILL OF SALE** | | | | |
| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
| 100 | FEBRUARY 17, 2015 | $1.00 | 25821600 | 14 |
| DATE FILED | | TIME FILED | STATUS | |
| FEBRUARY 25, 2015 | | 10:38 AM | RECORDED | |

SELLER

BRANDIE L MAILMAN

BUYER

SCOTT S MAILMAN

| INSTRUMENT TYPE | | | | |
|---|---|---|---|---|
| **PREFERRED MORTGAGE** | | | | |
| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
| 100 | FEBRUARY 17, 2015 | $125,581.86 | 25821600 | 15 |
| DATE FILED | | TIME FILED | STATUS | |
| FEBRUARY 25, 2015 | | 10:38 AM | RECORDED | |

MORTGAGOR

SCOTT S MAILMAN

MORTGAGEE

COVENTRY CREDIT UNION
1584 NOOSENECK HILL ROAD
COVENTRY, RI 02816

| INSTRUMENT TYPE | | | | |
|---|---|---|---|---|
| **SATISFACTION OF MORTGAGE** | | | | |
| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
| 100 | MARCH 5, 2015 | $127,984.00 | 26114900 | 4 |
| DATE FILED | | TIME FILED | STATUS | |
| MARCH 11, 2015 | | 10:47 AM | RECORDED | |

MORTGAGEE

PAWTUCKET CREDIT UNION

MORTGAGOR

SCOTT MAILMAN

ISSUED AS AN ABSTRACT OF TITLE AS OF

DATE: 05/17/2017      TIME: 12:39 PM

*Christian H. Waldron*

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

DHS, USCG, CG-1270 (REV. 06-04)

OMB APPROVED
1625-0027



# UNITED STATES OF AMERICA

### DEPARTMENT OF HOMELAND SECURITY
### UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

# *CERTIFICATE OF DOCUMENTATION*

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| MAILMAN'S SAVING GRACE | 1173235 | TNRD4652C505 | 2005 |

| HAILING PORT | HULL MATERIAL | MECHANICAL PROPULSION |
|---|---|---|
| DANVERS MA | FRP (FIBERGLASS) | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 21GRT | 16NRT | 38.7 | 12.0 | 6.8 |

**PLACE BUILT**

DECATUR IN

| OWNERS | OPERATIONAL ENDORSEMENTS |
|---|---|
| SCOTT S MAILMAN | RECREATION |

**MANAGING OWNER**

SCOTT S MAILMAN
115 WATER STREET, UNIT 18
BEVERLY MA 01915

National Vessel Documentation Center USCG
I hereby certify this to be a true copy
of the records of this office.

*Christine H. Wahlen*          05/23/2017

Director, National Vessel Documentation Center

**RESTRICTIONS**
NONE

**ENTITLEMENTS**
NONE

**REMARKS**
None

**ISSUE DATE**
JUNE 02, 2015

**THIS CERTIFICATE EXPIRES**

JUNE 30, 2016

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

PREVIOUS EDITION OBSOLETE, THIS CERTIFICATE MAY NOT BE ALTERED

# EXHIBIT B

### *Note, Disclosure, and Security Agreement*

**Lender**
Tommark Inc.
d/b/a Sterling Associates
49 Church St.
Whitinsville, MA  01588

**Borrower**
Scott  S. Mailman

115 Water Street Unit 18
Beverly , MA  01915
☐ Refer to the attached addendum for additional Borrowers
and their signatures.

| | |
|---|---|
| Loan Number | ▆▆▆▆▆ |
| Loan Date | 2/17/2015 |
| Maturity Date | 2/19/2035 |
| Loan Amount | 125,581.86 |
| Renewal of | _____ |

**Truth-in-Lending Disclosures**

| Annual Percentage Rate The cost of my credit as a yearly rate. | Finance Charge The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 4.250% | $61,054.14 | $125,581.86 | $186,636.00 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due | "e" means an estimate. |
|---|---|---|---|
| 240 | $777.65 | Monthly beginning 3/19/2015 | |
| | $ | | |
| | $ | | |
| | $ | | |

**Demand.** ☐ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Variable Rate.**
☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☐ The annual percentage rate may increase during the term of this transaction if

The rate may not increase more than once _____ and may not increase more than _____ % each
_____ . Any increase will take the form of _____ .
If the rate increases by _____% in _____ , the _____ will increase
to _____ . The rate will not go above _____% .

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a penalty.
☐ If I pay off this note early, I will not be entitled to a refund of part of the additional finance charge.
☒ **Late Charge.** If a payment is late (more than  15  days after due) I will be charged 5% of the late payment not to exceed $5.00

**Security.** I am giving a security interest in:  2005 Formula 37PC 38'5"  Hull #TNRD4652C505
☒ the goods or property being purchased.    2005 Mercruiser 350 HP, Serial #not available  not available

☐ collateral securing other loans with you may also secure this loan.
☐ (brief description of other property)

**Filing Fees.** $_____
**Non-filing Insurance.** $_____
☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.
☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $_____ |
| To public officials | $_____ |
| Pawtucket Credit Union | $125,576.86 |
| Share Acct. | $5.00 |
| (less) Prepaid Finance Charge(s) | $_____ |
| **Amount Financed** | $125,581.86 |

## Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $125,581.86, plus interest from 2/17/2015 at the rate of 4.250 % per year until 2/19/2035 .

Interest accrues on a daily simple interest basis.

I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is boat refinance .

☐ **Variable Rate.** The rate above may then change so as always to be _____ the following index rate:

_____

_____

The interest rate may not change more than _____ % each _____. The annual interest rate in effect on this note will not at any time be more than _____ % or less than _____ %. The interest rate in effect on this note may change (as often as) _____ (assuming there is a change in the base rate) and an increase in the interest rate will cause an increase in

☐ the amount of each scheduled payment. ☐ the amount due at maturity.
☐ the number of payments.

**Payment.** I will pay this note as follows:

☐ Interest due

Principal due

☒ This note has __240__ payments. The first payment will be in the amount of $777.65 _____ and will be due 3/19/2015 _____ . A payment of $ 777.65 _____will be due on the 19th day of each month thereafter. The final payment of the entire unpaid balance of principal and interest will be due 2/19/2035 _____ .

Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. If Variable Rate is checked, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this Loan Agreement will have the opposite effect on payments that increases would have. The interest rate(s) and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected or agreed to is found to exceed the highest rate or charge allowed (or the amount agreed upon), you will refund an amount necessary to comply with the law. Changes in the index between scheduled changes in the interest rate will not affect the interest rate.

**Index.** If you and I have agreed that the interest rate on this Loan Agreement will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this Loan Agreement. You do not guaranty, by selecting any index, that the interest rate on this Loan Agreement will be the same rate you charge on any other loan or class of loans you make to me or any other borrower. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this Loan Agreement on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in either or both of the next sentences.

• ☒ Interest will accrue at the rate of __4.250__ % per year on the balance of this Loan Agreement not paid at maturity, including maturity by acceleration.

• ☐ Beginning _____ after final maturity (including maturity by acceleration), interest will accrue at the rate of _____% per year on the unpaid balance of this Loan Agreement.

For purposes of this section, maturity occurs on any of the following dates.
• If this Loan Agreement is payable on demand, on the date you make demand for payment.
• If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
• On the date of the last scheduled payment of principal.
• On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

☐ **Additional Finance Charge.** I also agree to pay a nonrefundable fee of $_____ , and it will be ☐ paid in cash, ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.) .

☐ **Minimum Interest Charge.** I agree to pay a minimum interest charge of $_____ if I pay this note off before you have earned that much in interest.

☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

☐ **Other Terms.**

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if either of the following occur.

• I fail to make a payment when due.

• The occurrence of an event that substantially impairs the value of any collateral securing this note.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

• Make all or any part of the amount owing by the terms of this Loan Agreement due.

• Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.

• Make a claim for any and all insurance benefits or refunds that may be available on my default.

• Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.

• Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.

• Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay all reasonable expenses of collection, enforcement, or protection of your rights and remedies under this Loan Agreement. Expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the rate provided in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Massachusetts, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days' notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2005 Formula 37PC 38'5" Hull #TNRD4652C505
2005 Mercruiser 350 HP, Serial #not available   not available

☐ **All Debts.** The Property will also serve as collateral for all present and future debts.

☐ **Other Security.** This Loan Agreement is secured by

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

**Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

---

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.
- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

---

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

---

**Third Party Agreement**

For the purposes of the provisions within this enclosure, *I*, *me* or *my* means the person signing below and *you* means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

---

Attach FTC "Preservation of Consumer Claims and Defenses"
Notice if Applicable.

---

## Insurance

**Credit Insurance.**

**I CANNOT BE DENIED CREDIT SIMPLY BECAUSE I CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS I SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.** If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☒ None     Premium  $ _____
                               Term     _____

**Credit Disability**

☐ Single  ☐ Joint  ☒ None     Premium  $ _____
                               Term     _____

☐ Single  ☐ Joint  ☐ None     Premium  $ _____
                               Term     _____

**Signature.** My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____ DOB _____

X_____ DOB _____

X_____ DOB _____

☐ **Single Interest Insurance.** Single interest insurance is required. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____
for _____ months of coverage.

☐ **Property Insurance.** Property insurance is required. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for
_____ of coverage.

---

### Federal Sale of Insurance Disclosure

*Product* refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.

- The Product is **not a deposit account or other obligation** of any depository institution or any affiliate of any depository institution.

- The Product is **not guaranteed or insured** by any depository institution or any affiliate of any depository institution.

- The Product is **not insured** by the Federal Deposit Insurance Corporation (FDIC).

- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, **is not insured** by any federal government agency.

- ☐ If this box is checked, there is **investment risk** associated with the Product, including the **possible loss of value.**

By signing, I acknowledge that I have received a copy of this disclosure on today's date.  Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date _____

X_____ Date _____

X_____ Date _____

### NOTICE TO COSIGNER

You (the cosigner) are being asked to guaranty this debt.  Think carefully before you do. If the borrower doesn't pay the debt, you will have to.  Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay.  You also may have to pay late fees or collection costs, which increase this amount.  The creditor can collect this debt from you without first trying to collect from the borrower.

The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

### Signatures

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.  **Cosigners: See Notice to Cosigner above before signing.**

X_____
Scott S. Mailman

X_____

X_____

| (Optional) |
| --- |
| Signed _____ For Lender |
| Title |

# EXHIBIT C

Batch #: 25821600 / Doc #: 15 / File Date: 2/25/2015 10:38:00 AM

## FIRST PREFERRED SHIP MORTGAGE

This Mortgage, made this 17 day of February 2015 , between SCOTT S. MAILMAN (100%) whose address is 115 WATER STREET, UNIT 18 BEVERLY, MA 01915 (hereinafter referred to as "Mortgagor") and COVENTRY CREDIT UNION. (100%) whose address is ATTN: LOAN SERV., 1584 NOOSENECK HILL ROAD COVENTRY, RI 02816 (hereinafter referred to as "Mortgagee"):

### W I T N E S S E T H:

WHEREAS, the Mortgagor is the sole owner of that certain vessel called MAILMAN'S SAVING GRACE Official # 1173235 ("Vessel"), as more fully described in the Certificate of Documentation, together with all the engines, boilers, machinery, masts, bowsprits, boats, anchors, cables, rigging, tackle, apparel, furniture, nets and fishing gear, and all other appurtenances thereto belonging and appertaining, and any and all additions, improvements, and replacements hereafter made in or to the Vessel or any part of appurtenance or equipment thereof;

WHEREAS, the Mortgagor is justly indebted to the Mortgagee in the sum of $125,581.86 and, to secure the payment of said indebtedness plus interest, has executed and delivered this FIRST Preferred Ship Mortgage ("Mortgage") and a Note Disclosure and Security Agreement ("Note") to the Mortgagee dated February 17, 2015.

NOW, THEREFORE, THIS MORTGAGE WITNESSETH:

That in consideration of the premises stated above and the mutual covenants herein described, and to secure the payment of the said principal sum and interest thereon at the rate specified in the Note, and the payment of any advancements that shall hereafter be made, and of the Note and the performance of all the covenants and conditions herein, Mortgagor has granted, bargained, sold, conveyed, transferred, assigned, remised, released, mortgaged, set over, and confirmed and by these presents does grant, bargain, sell, convey, transfer, assign, remise, release, mortgage, set over, and confirm unto the Mortgagee the whole of the Vessel.

TO HAVE AND TO HOLD all the property aforesaid unto the Mortgagee.

PROVIDED, HOWEVER, and these presents are upon the condition that if the Mortgagor shall pay or cause to be paid to the Mortgagee the aforesaid principal sum with interest thereon in accordance with the terms and conditions of the Note and shall pay any and all advances hereafter made to Mortgagor by the Mortgagee, and shall keep, perform, and observe all and singular the covenants and promises in the Note and in these presents expressed to be kept, performed, and observed by or on the part of the Mortgagor, then this Mortgage and the estate hereby granted shall cease, determine, and be void, otherwise to remain in full force and effect.

The Mortgagor hereby agrees to pay the principal amount aforesaid, and the interest thereupon as stipulated and to fulfill, perform, and observe each and every one of the covenants, agreements, and conditions in this Mortgage and in said Note contained.

The Mortgagor hereby covenants and agrees with the Mortgagee as follows:

### ARTICLE I

That the Mortgagor is a citizen of the United States.

### ARTICLE II

That the Mortgagor lawfully owns and is lawfully possessed of the mortgaged property, and the Mortgagor covenants and promises that Mortgagor will warrant and defend the title and possession thereto and every part thereof for the benefit of the Mortgagee against the claims and demands of all persons whomsoever; and further warrants that there are no liens, mortgage or mortgages on the Vessel except: NONE.

### ARTICLE III

That the Mortgagor at Mortgagor's own cost, shall keep the Vessel insured in an amount equal to the full commercial value but not in any case for less than one hundred percent (100%) of the amount remaining unpaid on said principal sum on said Note or notes. Said insurance shall be placed with responsible underwriters satisfactory to the Mortgagee under such form of policies as Mortgagee approves and shall include protection and indemnity coverage; said policies are to be delivered to the Mortgagee, and shall be payable as the interest of the parties may appear. In the event Mortgagor fails to obtain said insurance, then the Mortgagee may do so for the account of Mortgagor. Said policies shall not be cancelled, amended, or modified without Mortgagee's consent. The Mortgagor shall not do any act, nor voluntarily suffer or permit any act to be done whereby any insurance is or may be suspended, impaired, or defeated and shall not suffer or permit the Vessel to engage in any voyage or to carry any cargo not permitted under the policies of insurance in effect.

### ARTICLE IV

That neither the Mortgagor nor the master of the Vessel shall have any right, power, or authority to create, incur or permit to be placed or imposed upon the Vessel any liens whatsoever other than for crew's wages, wages of stevedores and salvage. The Mortgagor shall carry a properly certified copy of this Mortgage with the ship's papers and shall exhibit the same to any person having business with the Vessel which might give rise to any lien other than for crew's or stevedore's wages and salvage.

### ARTICLE V

That the Mortgagor shall place and keep prominently displayed in the chart room framed printed notices reading as follows:
THIS VESSEL IS COVERED BY A FIRST PREFERRED SHIP MORTGAGE TO:

### COVENTRY CREDIT UNION

PURSUANT TO THE TERMS OF THE SAID MORTGAGE, A CERTIFIED COPY OF THE MORTGAGE MUST BE KEPT

WITH THE VESSEL'S PAPERS.  NEITHER THE MORTGAGOR NOR THE MASTER OF THE VESSEL HAS ANY RIGHT, POWER, OR AUTHORITY TO CREATE, INCUR, OR PERMIT TO BE IMPOSED UPON THE VESSEL ANY LIENS WHATSOEVER OTHER THAN FOR CREW'S WAGES, WAGES OF STEVEDORES, OR SALVAGE.

## ARTICLE VI

That if a libel shall be filed against the Vessel or if the Vessel shall be seized or taken into custody or sequestered by virtue of any legal proceedings in any court, the Mortgagor shall within thirty (30) days thereafter cause the said Vessel to be released and discharged, but this article shall not be construed as a waiver of Articles III and IV.

## ARTICLE VII

That at all reasonable times the Mortgagor shall maintain and preserve the Vessel in good condition, working order, and repair, as at the date of the execution of this Mortgage, ordinary wear and tear and depreciation excepted.  Mortgagee shall have the right of inspection at any time.

## ARTICLE VIII

That the Mortgagor shall pay and discharge, when due and payable from time to time, all taxes, assessments, penalties, and governmental charge imposed upon the Vessel, its tackle, etc. subject, or to become subject, to this Mortgage.

## ARTICLE IX

That if the Mortgagor shall make default in the performance of any of the covenants of this Mortgage on Mortgagor's part to be performed, the Mortgagee may, in Mortgagee's discretion, do any act or make any expenditure necessary to remedy such default, including, without limitation of the foregoing, entry upon the Vessel to make repairs and the Mortgagor shall promptly reimburse the Mortgagee, with interest at the rate of ten percent (10%) per annum, for any and all expenditures so made or incurred;  and until the Mortgagor shall so reimburse the Mortgagee for such expenditures the amount thereof shall be added to the amount of the debt secured by this Mortgage, and shall be secured by this Mortgage in like manner and extent as if the amount and description thereof were written herein;  but the Mortgagee though privileged so to do, shall be under no obligation to the Mortgagor to make such expenditures nor shall the making thereof relieve the Mortgagor of any default in that respect.  The Mortgagor shall also reimburse the Mortgagee promptly with interest at the rate of ten percent (10%) per annum for any and all advances, expenses, and attorney's fees made or incurred by the Mortgagee at any time and for any and all damages sustained by the Mortgagee from or by reason of any default of the Mortgagor.

## ARTICLE X

That until default shall have been made in the performance by the Mortgagor or any terms, conditions, covenants, and promises herein contained, the Mortgagor may retain and possess the Vessel and may use and operate the same.

## ARTICLE XI

That the Mortgagor shall comply with and satisfy all the provisions of Title 46, Chapter 313 Section 31322 of the United States Code and shall establish and maintain this Mortgage as a preferred mortgage under said United States Code, and the Mortgagor shall not sell, mortgage, transfer nor change the flag of the Vessel without the written consent of the Mortgagee.

## ARTICLE XII

In any case of default, the Mortgagee shall be entitled to exercise the right of entry and retaking of the Vessel and its appurtenances and equipment without legal process and with any and all other rights, privileges, and powers herein granted and confirmed.

## ARTICLE XIII

In any event of Mortgagor's default of prompt and punctual payment when due in the payment of any interest or principal sum on said Note, or if default shall be made hereunder by the Mortgagor in the observance, or performance of any other of the covenants, agreements, or conditions, of the Note or this Mortgage contained on Mortgagor's part to be observed and performed; or if the Mortgagor shall be adjudged bankrupt, or if a receiver be appointed, or if the Mortgagor shall make a general assignment for the benefit of creditors, or if the Vessel shall be libeled or levied upon, taken into custody or sequestered by virtue of any legal proceedings and such legal proceedings are not vacated or set aside and the said property released with (15) fifteen days, or if the Mortgagor shall remove or attempt to remove this said property subject, or to become subject, to this Mortgage beyond the limits of the United States, without the intent to return to the United States, then in every such case the entire principal sum and/or said Note with interest shall be immediately due and payable at Mortgagee's option without prior notice.  Nothing in this article shall be deemed a waiver of the provisions of Articles III and IV.  If such sums are not paid forthwith, Mortgagee may take possession of the Vessel, its tackle , equipment, etc. without process of law, and Mortgagor shall forthwith surrender possession to Mortgagee who may sell the same at public or private sale after written notice to Mortgagor by mail.  Mortgagee shall have the right to bid or purchase the Vessel.

## ARTICLE XIV

Proceeds from any sale shall be applied as follows:

| | |
|---|---|
| First. | To pay charges of sale, including expenses of retaking. |
| Second. | Attorney's fees and costs. |
| Third. | Payment of unpaid balance of principal and interest on said Note, and advances made by Mortgagee. |
| Fourth. | Any surplus to Mortgagor.  If insufficient funds are realized to satisfy the sums set out above, Mortgagor shall forthwith pay Mortgagee the amount of such deficiency. |

## ARTICLE XV

That in case the Mortgagee shall have proceeded to enforce any right under this indenture, by foreclosure, entry, or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Mortgagee,

then the Mortgagor and the Mortgagee shall be restored to their former positions except that the cost of such proceedings and attorney's fees shall be charged to the account of the Mortgagor and bear interest.

### ARTICLE XVI

That no delay or omission of the Mortgagee to exercise any right or power accruing upon any default shall impair any such right or power, or shall be construed to be a waiver of any such default or acquiescence therein; and every power and remedy given herein may be exercised from time to time as often as may be deemed expedient.

### ARTICLE XVII

Nothing contained in this Mortgage shall be construed as a waiver of the preferred status of this Mortgage by the Mortgagee.

### ARTICLE XVIII

In addition to the payment of the Note herein set forth,   this Mortgage shall secure the payment of all other sums with interest thereon which may hereafter be borrowed  or received by the Mortgagor from Mortgagee or which may be paid by the Mortgagee for the account of Mortgagor.

### ARTICLE XIX

The word "Mortgagor" means every party (individuals and corporations) who signs this Mortgage as Mortgagor, every registered owner of the Vessel, and the personal representatives, successors and assigns of Mortgagor.  The word "Mortgagee" means the Mortgagee and anyone who has the Mortgagee's rights under this Mortgage.  If this Mortgage is given by a corporation, the words it and its may also mean the corporation.

### ARTICLE XX

All notices to Mortgagor may be made by mail addressed as set forth on page one.

All covenants, stipulations, and agreements in this Mortgage contained are and shall bind and inure to the benefit of the Mortgagor and Mortgagee.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage the date and year first above written.

SCOTT S. MAILMAN, Owner

STATE OF New Hampshire
COUNTY OF Rockingham

On 2-17-15 before me, Sean Rogers Notary Public, personally appeared
SCOTT S. MAILMAN

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the said state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   Commission Expires: 12-3-19

# EXHIBIT D



Salter
McGowan
Sylvia &
Leonard

ELIZABETH A. LONARDO
elonardo@smsllaw.com

November 23, 2016

**CERTIFIED MAIL/RRR and REGULAR MAIL**
Scott S. Mailman
7 Patriot Lane, Apt 12
Georgetown, MA 01833

      RE:    Loan # 91350323
Collateral:    38.7' Vessel, Identified as "Mailman's Saving Grace"
           Official Number: 1173235 (the "Collateral")

### RIGHTS OF DEFAULTING BUYER UNDER THE MASSACHUSETTS RETAIL INSTALLMENT SALES ACT

      This office represents Coventry Credit Union (the "Credit Union"), the holder of a certain promissory note made by you and dated February 17, 2015 in the original principal amount of $125,581.86 (the "Note").  You have been in default of your obligations under the Note to the Credit Union for at least ten (10) days.

      You may cure your default in the Note by paying to the Credit Union at 2006 Nooseneck Hill Road, Coventry, Rhode Island 02816 $4,673.55, the amount outstanding under the Note, before **December 16, 2016**.  If you pay this amount within the time allowed, you are no longer in default and may continue on with the transaction as though no default had occurred.

      If you do not cure your default by the date stated above, the Credit Union may sue you to obtain a judgment for the amount of the Note or, if applicable, may take possession of the Collateral.

      If the Credit Union takes possession of the Collateral, if any, you may get it back by paying the full amount of your debt under the Note plus any reasonable expenses incurred by the Credit Union if you make the required payment within twenty days after it takes possession.

      Massachusetts regulations require us to inform you that:

(a) the amount of the debt under the promissory Note as of November 23, 2016 is: $123,121.13 (NOTE: this amount is different than the cure amount contained in the Notice);

(b) the name of the creditor to whom such debt is owed is: Coventry Credit Union

(c) unless the borrower who is liable under the identified loan obligation, within 30 days after receipt of this letter, disputes the validity of this debt, or any portion thereof, the debt will be assumed to be valid by the creditor; and

(d) if such borrower notifies this creditor in writing within 30 days after receipt of this letter that the debt, or any portion thereof is disputed, the creditor will obtain verification of the debt and provide such borrower, or an attorney for such borrower, the following documents, if applicable or available:

- All documents, including electronic records or images, which bear the signature of the borrower and which concern the debt being collected;

- A ledger, account card, account statement copy, or similar record, whether paper or electronic, which reflects the date and amount of payments, credits, balances, and charges concerning the debt, including but not limited to interest, fees, charges or expenses incidental to the principal obligation which the creditor is expressly authorized to collect by the agreement creating the debt or permitted to collect by law;

- The name and address of the original creditor, if different from the collecting creditors; and

- A copy of any judgment against the borrower.

Notwithstanding the foregoing, if you have filed a bankruptcy petition and an "automatic stay" is in effect in your case, of if you have received a bankruptcy discharge and have not reaffirmed the obligation identified in this letter/notice, then the Credit Union is exercising its *in rem* rights and does not intend to pursue collection of that obligation from you personally.  If these circumstances apply, then noting in this letter/notice is, or should be read to be, a demand for payment from you personally, but rather should be considered for informational purposes only.  Unless the Bankruptcy Court has ordered otherwise, however, please note that the Credit Union retains whatever rights it may hold through a mortgage, security interest, or otherwise in the assets and property that secured the identified obligation and the Credit Union will not and shall not attempt to collect the discharged debt as your personal liability.

Please be advised that:

- The telephone number at which you can reach the Credit Union is: (877) 397-1900.
- The Credit Union's office hours are: Monday-Friday 8:00 a.m- 4:30 p.m. eastern time.
- Salter McGowan Sylvia & Leonard's phone number is (401) 274-0300 or (800) 932-9189 and its office hours are: Mon-Fri 9:00 a.m. – 5:00 p.m. eastern time.

**The law firm of Salter McGowan Sylvia & Leonard Inc. collects debts for lenders. This is an attempt to collect a debt. Any information obtained in this regard will be used for that purpose.**

Very truly yours,

Elizabeth A. Lonardo

Certified Mail No.: 7014 3490 0001 1486 4163

F:\Contents\Coventry Credit Union\Mailman\Rights of Defaulting Buyer Under the Mass Retail Installment Sales Act (From SMSL 11.23.2016).doc